UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GEORGE PROBY, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:14-cv-1620-JAR |
| | ) |
| TERRY RUSSELL, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' motion for summary judgment. (Doc. No. 67.) Plaintiff George Proby is a Missouri inmate, and initiated this action *pro se* against a multitude of prison officials. Plaintiff alleges that Defendants violated his constitutional rights by placing and retaining him in administrative segregation, and brings a Due Process claim under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.[1] He also alleges that he has not received fair administrative procedures and has been subject to retaliation for exercising rights under the First Amendment (among other, less defined retaliation claims, see Doc. No. 1-1 at 12), that he has been denied access to the law library and other legal materials, and that he has not been afforded necessary mental health treatment. Defendants move for summary judgment, arguing that Plaintiff was afforded due process, that he failed to exhaust administrative remedies prior to bringing the instant suit, that no retaliation took place, and that Defendants are entitled to

---

[1] Plaintiff also asserted claims under the Eighth Amendment, as well as claims for access to courts and claims against the named Defendants in their official capacities. These claims, which the Court determined were legally frivolous and failed to state a claim, were dismissed early in the case. (Doc. No. 7.)

qualified immunity. For the reasons set forth below, Defendants' motion for summary judgment will be granted.

## BACKGROUND

The record, construed in favor of the nonmoving party, establishes the following. Plaintiff is currently incarcerated at Jefferson City Correctional Center ("JCCC"), a Missouri Department of Corrections ("DOC") facility located in Jefferson City, Missouri. On October 17, 2012, Plaintiff was incarcerated at Eastern Reception, Diagnostic and Correctional Center ("ERDCC"), a DOC facility in Bonne Terre, Missouri.

The individual Defendants[2] in this case were and are employees of the DOC who held various positions at the two facilities. The following Defendants remain in the case: Terry Russell, the warden and superintendent of ERDCC; Jason Wilson, deputy warden of ERDCC; Alan Butterworth, the functional unit manager at ERDCC; Jim Wallen, Frederick Nelson, Patricia Jones, Noel Obi, Bradley Hall, and Jeremy Elless, correctional officers at ERDCC; James Nicholson, an investigator at ERDCC; Jay Cassady, warden of JCCC; Paul Gore, functional unit manager at JCCC; and Alan Earls, the director of the DOC.

On October 17, 2012, Plaintiff was involved in an incident in the ERDCC mess hall wherein he allegedly engaged in a fight with another inmate. Plaintiff characterizes the interaction as an "assault" on him by the other inmate. Defendants Frederick Nelson and Patricia Jones were the first officers to respond to the fight. Defendant Nelson alleged that he was kicked in the head by Plaintiff, but Plaintiff denies that anyone was kicked in the head or otherwise injured during the incident.

---

[2] Again, because claims against these Defendants in their official capacities have been dismissed, the remaining claims are asserted against Defendants in their individual capacities only. *See* Doc. No. 6.

Plaintiff had already been assigned two conduct violations—including one for fighting—earlier in the year. Following the incident in the mess hall, Plaintiff was assigned to administrative segregation, and received three conduct violations for assaulting another offender and for assaulting a corrections officer. After serving thirty days in administrative segregation at ERDCC, and following a major disciplinary action hearing (at which Plaintiff was not present) wherein it was determined that he violated prison rules by assaulting another inmate and a corrections officer during the mess hall incident, Plaintiff was transferred to administrative segregation in the super maximum wing of JCCC. Defendants allege that Plaintiff was twice offered the opportunity to waive his right to remain silent and make a statement to Defendant Alan Butterworth, the functional unit manager, regarding the conduct violations he received in advance of his major disciplinary hearing, but Plaintiff refused to waive his rights and make such a statement.

Plaintiff was criminally charged with assault on a correctional officer, a Class B felony, and was assigned an attorney. Plaintiff was found not guilty at trial approximately a year after the mess hall incident took place.[3]

---

[3] A video, purportedly showing Plaintiff's altercation, was offered by prosecutors at Plaintiff's criminal trial, and has been submitted to the Court as a part of the record. Plaintiff has consistently objected to the veracity of the video tape, and has objected that it does not show any correctional officer being kicked in the head. Upon Plaintiff's claim that the video tape in the record is not the same tape shown at Plaintiff's trial, the Court ordered Defendants to procure the video evidence shown at Plaintiff's trial and to submit a verified copy. Having reviewed both submitted tapes, the Court determines that they are, in fact, the same tape. However, construing the record in Plaintiff's favor, as the Court must for purposes of the instant motion, the Court agrees with Plaintiff that the tape does not definitively show that Plaintiff or anyone else assaulted an officer. The tape does show, however, a disruptive altercation that included Plaintiff occurring in the prison mess hall, requiring the response of numerous correctional officers. For the reasons explained in the remainder of this Memorandum and Order, whether the video actually shows Plaintiff assaulting a correctional officer—and indeed, whether Plaintiff actually assaulted a correctional officer—is not ultimately dispositive of his current cause of action under 42 U.S.C. § 1983.

Upon transfer to JCCC, Plaintiff was placed on Phase 0 of JCCC's phase program, a tiered program by which inmates are afforded incrementally more privileges following periods of good behavior. Plaintiff received periodic classification reviews, including in November and December 2012, and in February, May, July, September, and December 2013. Due to conduct violations, Plaintiff progressed slowly through the phase system; although he was temporarily promoted in September of 2013, bed space was unavailable, and he received another conduct violation before space became available approximately one month later. In April 2013, he received a violation after officers found 20 packages of bacitracin in his cell while Plaintiff was in the shower. Plaintiff then refused to exit the shower, causing a disturbance. (Doc. No. 68-13 at 2.) He was finally promoted to the next phase in December 2013.

Upon the Court's request, the parties submitted additional evidence establishing Plaintiff's housing status. Although Plaintiff was promoted to the next phase in December 2013, Plaintiff would later be issued additional conduct violations. In fact, Plaintiff has accumulated 18 conduct violations total, and therefore has yet to be released into the general prison population. These additional conduct violations are immaterial and unrelated to Plaintiff's claims before this Court. For purposes of analyzing Plaintiff's claims, the Court considers whether Plaintiff received meaningful review, and his promotion in December 2013 suggests that he did. To the extent Plaintiff wishes to challenge the basis for the additional violations he received, and the punishment imposed upon him as a result, he must do so separately; such claims are not before the Court in the instant suit.

Plaintiff originally filed administrative complaints, but apparently abandoned them at the grievance stage, though this is the subject of some dispute between the parties. Plaintiff was

eventually advised that he should stop filing duplicate grievances, and that his continued filing of duplicate grievances would be considered misuse of the procedure. (Doc. No. 1 at 7.)

Plaintiff filed his instant lawsuit on September 16, 2014, asserting a Due Process claim under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 and a First Amendment Retaliation Claim against Defendants Cassady, Hall, and Obi. Plaintiff alleges that while in solitary confinement, his health deteriorated, he lost 38 pounds and developed hypertension, and he became paranoid and anti-social. He claims he has not received a needed psychological evaluation, and that although he required mental health treatment during his time in administrative segregation, his pleas for such treatment were ignored.

**Arguments of the Parties**

Defendants move for summary judgment, and assert four arguments. First, Defendants argue that Plaintiff received requisite procedural due process and was not deprived of a liberty interest. They argue that he was placed in administrative segregation for good cause, and that he has received frequent and meaningful review of his status. Next, Defendants Cassady, Hall, and Obi argue that they did not retaliate against Plaintiff for expression covered by the First Amendment, and that Plaintiff has failed to offer any evidence of retaliatory motive, as is required to establish a claim of First Amendment retaliation. Meuir v. Greene Cnty. Jail Emps., 487 F.3d 1115, 1119 (8th Cir. 2007) (citations omitted). Next, Defendants argue that Plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C § 1997e(a), because he has not completed the grievance process for any of his complaints but instead proceeded to assert his claims in federal court. Finally, Defendants argue their actions are protected by qualified immunity, because they are government officials (by virtue of their status as prison employees) and their conduct does not violate a clearly established statutory or constitutional right, of which

5

a reasonable person would have known. See, e.g., Krout v. Goemmer, 583 F.3d 557 (8th Cir. 2009).

In response, Plaintiff offers mostly additional factual assertions. He claims he has been denied access to legal materials and has been unable to conduct discovery, which has made it difficult for him to effectively argue his case (Doc. No. 74 at 2). However, he has submitted no actual evidence, beyond his own testimony, of his claims.

## DISCUSSION

**Legal Standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

In determining whether summary judgment is appropriate in a particular case, the court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Benford v. Correctional Med. Servs., 2012 WL 3871948, at *4 (E.D.Mo. Sept. 6, 2012) (citing Celotex Corp., 477 U.S. at 331). The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. (citing Anderson, 477 U.S. at 249). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011)).

Plaintiff's *pro se* status does not excuse him from responding to Defendants' motion with specific factual support for his claims to avoid summary judgment, Beck v. Skon, 253 F.3d 330, 333 (8th Cir. 2001), or from complying with local rules, see Schooley v. Kennedy, 712 F.2d 372, 373 (8th Cir. 1983). See Fed. R. Civ. P. 56(e) ("[An] adverse party may not rest upon the mere allegations or denials of . . . [his] pleading, but . . . [must], by affidavits or as otherwise provided in this rule, . . . set forth specific facts showing that there is a genuine issue for trial."); Anderson, 477 U.S. at 249–52 (explaining that nonmovant must offer controverting affidavits or evidence from which a reasonable jury could return a verdict in his favor); Carman v. Treat, 7 F.3d 1379, 1381 (8th Cir. 1993) (failing to allow *pro se* prisoner to disregard Federal Rules of Civil Procedure).

**Exhaustion of Administrative Remedies**

The Court will first consider whether Plaintiff exhausted administrative remedies with regard to his claims. To the extent Plaintiff did not exhaust his remedies in accordance with 42 U.S.C. § 1997e(a), his claims must be dismissed. See Porter v. Sturm, 781 F.3d 448, 452 (8th Cir. 2015); see also Jones v. Bock, 549 U.S. 199, 210-20 (2007) ("[T]here is no question that exhaustion is mandatory under [§ 1997e (a)] and that unexhausted claims cannot be brought in court."); Benjamin v. Ward County, 632 Fed. Appx. 301 (8th Cir. 2016).

Defendants argue that Plaintiff did not complete the administrative complaint and prison grievance process, and therefore, his claims should be denied. 42 U.S.C § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. "Under the plain

7

language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court." Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003).

The Court agrees that Plaintiff has not exhausted administrative remedies with regard to his claim that he has been denied access to mental health care. Plaintiff has submitted no evidence of compliance or attempted compliance with JCCC's administrative procedures with regard to such a claim. There is no evidence of record that Plaintiff has ever complained, utilizing the proper administrative channels, of a lack of mental health care, either before, during, or after his time in administrative segregation.

However, the Court is not persuaded by Defendants' argument that Plaintiff failed to exhaust administrative remedies with regard to the remainder of his claims. Plaintiff alleges that although he has attempted to comply with the grievance process with regard to his purportedly baseless discipline, his attempts to do so have been thwarted. The record also indicates that, at least to some degree, Plaintiff has attempted to assert his grievances according to the established procedure; for example, the record confirms that he filed a grievance alleging falsified documents (ERDCC 12-3568) and a grievance alleging that he was denied a fair and impartial hearing (ERDCC 12-2603). Thus, except with regard to his claims regarding mental health, the Court finds that Plaintiff sufficiently exhausted—or at least attempted to exhaust—his administrative remedies, and will proceed to consider Defendants' alternate arguments for summary judgment.

**Due Process**

Defendants next assert that they are entitled to summary judgment because Plaintiff was not deprived of a liberty interest when he was placed in administrative segregation. "To prevail on a Fourteenth Amendment due process claim, [a plaintiff] must first demonstrate that he was

deprived of life, liberty, or property by government action." Orr v. Larkins, 610 F.3d 1032, 1034 (8th Cir. 2010) (quoting Phillips v. Norris, 320 F.3d 844, 846 (8th Cir. 2003)). An incarcerated plaintiff can only demonstrate deprivation of a protected liberty interest when he shows conditions imposing "atypical or significant hardship . . . in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 484 (1995). "In order to determine whether an inmate possesses a liberty interest, we compare the conditions to which the inmate was exposed in segregation with those he or she could expect to experience as an ordinary incident of prison life . . . We do not consider the procedures used to confine the inmate in segregation." Phillips, 320 F.3d at 847 (internal quotations omitted). See also Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996) ("If [the plaintiff] has a liberty interest, it is an interest in the nature of his confinement, not an interest in the procedures by which the state believes it can best determine how he should be confined.").[4]

Moreover, even when officials violate established rules, "there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." Phillips, 320 F.3d at 847. "The general rule flowing from these cases is that the Due Process Clause standing alone confers no liberty interest in freedom from state action taken

---

[4] In a recent pleading, Plaintiff asserts that he is not "suing because I was placed on administrative segregation . . . I'm suing because [three] Defendants filed false charges against me . . . [one] Defendant lied about giving me a major disciplinary hearing . . . [and] I was placed in a [sic] atypical and significant hardship[.]" (Doc. No. 104 at 4.) Aside from atypical and significant hardship, which is addressed in this Memorandum and Order, Plaintiff's complaints do not constitute deprivations of life, liberty, or property by government action, and are insufficient to maintain an action under 42 U.S.C. § 1983. For that reason, the Court has focused on the elements of Plaintiff's complaint that could plausibly support relief under 42 U.S.C. § 1983—namely, whether his assignment to administrative segregation could constitute deprivation of a liberty interest. *See Nickless v. Saint Gobain Containers*, 2012 WL 1414849, at *4 (E.D. Mo. Apr. 24, 2012) (citing *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994) ("Pro se pleadings are to be liberally construed and are held to less stringent standards than those drafted by an attorney.").

within the sentence imposed." Persechini v. Callaway, 651 F.3d 802, 808 (8th Cir. 2011) (internal citations and quotation marks omitted). Thus, Plaintiff's assignment to administrative segregation alone is insufficient to constitute an actual liberty interest of which Plaintiff has been deprived. Sandin, 515 U.S. at 484.

The Court pays special attention to Plaintiff's claim, however, because it is true that he was apparently transferred from one facility to the super maximum security wing of another as a result of the purported incident in the prison cafeteria. The Supreme Court has held that an indefinite assignment to a super-max facility can result in atypical and significant hardships, sufficient to implicate a Sandin liberty interest capable of supporting a due process claim. Wilkinson v. Austin, 545 U.S. 209 (2005). However, in Wilkinson, the Court narrowly limited its holding, and specifically noted that a liberty interest was at stake because the conditions at the super-max facility were the most restrictive in the prison system, placement there was indefinite, and inmates lost their parole eligibility. Id. at 223-24 ("While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional content"). And in Wilkinson, although the inmates had a liberty interest at stake in avoiding assignment to a super-max facility, the Court concluded that the prison had afforded the prisoners sufficient due process by giving them notice, a hearing, and a right to appeal. Id. at 215.

In contrast with the Supreme Court's decision in Wilkinson, courts have repeatedly determined that more limited assignment to administrative segregation, accompanied by opportunity for review, does not deprive a prisoner of a liberty interest. See, e.g., Philllips v. Norris, 320 F.3d 844, 847-48 (8th Cir. 2003) (holding that 37 days in isolation for a disciplinary charge that was later dismissed was not an atypical and significant hardship under Sandin);

Hemphill v. Delo, 1997 WL 581079, at *2 (8th Cir. 1997) (unpublished) (per curiam) (holding that "four days locked in a housing unit, thirty days in disciplinary segregation, and approximately 290 days in administrative segregation" does "not constitute an 'atypical and significant hardship' when compared to the burdens of ordinary prison life."); Driscoll v. Youngman, Case No. 95-4037, 1997 WL 581072 (8th Cir. Sept. 22, 1997) (unpublished decision) (finding that 135 days in disciplinary and administrative segregation without "meaningful exercise, natural light or adequate time in the library" was not an atypical and significant hardship); Williams v. Terry, No. 5:07CV00188JLH/JTR, 2007 WL 3256838, at *2 (E.D. Ark. Nov. 2, 2007) ("[T]he Eighth Circuit has held that a temporary assignment to administrative segregation, with the temporary loss of certain privileges while in segregation, are *not* the kind of 'atypical and significant' deprivations that create a liberty interest and give rise to any due process rights.").

The Court finds that there is no constitutional violation of a liberty interest in the instant case. Plaintiff was transferred to JCCC from ERDCC. JCCC includes a super-max wing, but the entire prison is not a super-maximum facility, and the evidence of record establishes that Plaintiff has been held in administrative segregation in the super-max wing of the facility only pending improvement in his behavior. Moreover, Proby's placement in administrative segregation followed a hearing[5] and a history of conduct violations. Notably, prior to his transfer in November 2012, Plaintiff had received five conduct violations in 2012 alone. He received

---

[5] Plaintiff asserts that he never received a hearing, or that if a hearing took place, it was improper because he was not present and because it was performed by Defendant Butterworth. The Court finds this argument unavailing. Even accepting Plaintiff's version of events, it is undisputed that Plaintiff received regular classification hearings throughout his time in administrative segregation, as explained on p. 12, *infra*, and that he had received several conduct violations prior to his transfer. Thus, the uncontroverted evidence does not support a finding that a liberty interest was imperiled.

regular classification hearings in November and December 2012, and in February, May, July, September, and December 2013. Moreover, while in administrative segregation at JCCC, the record suggests Plaintiff received opportunities for recreation three times per week (but he apparently frequently chose not to attend). He was also allowed out of his cell for showers, medical appointments, and visits with attorneys. Thus, regardless of his transfer to administrative segregation in the super maximum wing of an alternate facility, Plaintiff has not suffered "atypical or significant hardship… in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (1995). On the record before it, the Court concludes that there has been no deprivation of a liberty interest and Plaintiff has not been subjected to a violation of his constitutional rights.

Furthermore, even assuming *arguendo* that Plaintiff's confinement in administrative segregation constituted deprivation of a liberty interest, Defendants nonetheless afforded him the process to which he was due by conducting disciplinary hearings for each written violation of the DOC policy. It is true that Plaintiff is entitled to due process with regard to his receipt of a major disciplinary violation. See Wolff v. McDonnell, 418 U.S. 539, 564-67 (1974) (due process entitles inmate to written notice of alleged violation at least 24 hours before hearing, opportunity to present witnesses and evidence, and written factual findings and reasons). But even assuming the initial hearing regarding Plaintiff's major disciplinary action was deficient because he did not have requisite notice or was not in attendance, by Plaintiff's own admission, he has been in front of the classification committee numerous times since that initial determination. (Doc. No. 1 at 29.) Thus, even if he was denied an initial right to present evidence and be present at the hearing (because he did not wish to waive his Miranda rights in light of his pending criminal charges),

Plaintiff subsequently had, and indeed, took advantage of, numerous opportunities to present evidence to the classification committee.

Additionally, many of Plaintiff's allegations relate to whether prison-created procedures were followed. For example, Plaintiff alleges that he was denied the right to participate in his disciplinary hearing, as guaranteed by the prison's internal policies. Plaintiff also alleges that members of the classification committee have refused to review the evidence he submitted, and have responded with hostility toward Plaintiff; Plaintiff alleges that Defendant Edward Ruppel, for example, a member of the classification committee whom Plaintiff moved to voluntarily dismiss from this case, informed Plaintiff that he didn't "give a [expletive] about no constitutional rights[.]" (Doc. No. 1 at 31.)

While such alleged behavior may trouble the Court, Plaintiff does not have a liberty interest in prison officials' following DOC or ERDCC/JCCC procedural rules for prison disciplinary proceedings. See Kennedy, 100 F.3d at 643 (8th Cir. 1996) (prison's failure to follow state procedural rule does not violate federal due process); Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997) (violation of prison policy does not give rise to § 1983 liability). As long as Plaintiff has received meaningful review, a liberty interest is not jeopardized. On the record before the Court, Plaintiff has not offered any actual evidence that his review has not been meaningful. On the contrary, Plaintiff's colorful disciplinary history suggests that the classification committee has been slow in promoting and advancing Plaintiff because of a pattern of conduct violations.

**First Amendment Retaliation**

Next, Defendants assert that Plaintiff's claim of First Amendment Retaliation against Defendants Cassady, Hall, and Obi must fail. To establish a claim of First Amendment

retaliation, a plaintiff must show: "(1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." Meuir v. Greene Cnty. Jail Emps., 487 F.3d 1115, 1119 (8th Cir. 2007) (citations omitted). Plaintiff claims that Defendants Hall and Obi retaliated against Plaintiff by interfering with his access to the prison grievance system and the legal system. Plaintiff asserts that Defendant Cassady, the JCCC warden, is also liable for Hall and Obi's purported actions through vicarious liability, as he was their supervisor.

Plaintiff has failed to allege exactly what actions were taken in retaliation against him. For example, Plaintiff's complaint suggests that Hall and Obi have denied Plaintiff access to legal materials, or have discouraged his use of the grievance system. But aside from a single document wherein Plaintiff was directed not to submit duplicate grievances, he has not offered evidence of any such discouragement or deprivation beyond his own self-serving statements. And even if the Court considers those statements for purposes of summary judgment, Plaintiff's claim nonetheless fails as a matter of law. Plaintiff fails to offer any evidence of record that supports a retaliatory motive for Hall and Obi's actions. "Merely alleging that an act was retaliatory is insufficient." Meuir, 487 F.3d at 1119. "To avoid summary judgment, [Plaintiff] must submit 'affirmative evidence [of] a retaliatory motive.'" Lewis v. Jacks, 486 F.3d 1025, 1029 (8th Cir. 2007).

With regard to Defendant Cassady, as Defendants rightly point out, there cannot be respondeat superior liability for Section 1983 cases. Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014) (citing Iqbal, 566 U.S. at 676 (2009)). Instead, the Plaintiff must show that a defendant's "direct action or his 'failure to properly supervise and train the offending employee' caused the constitutional violation at issue." Id. (citations omitted). Because Plaintiff has not

submitted any evidence of involvement by Defendant Cassady, summary judgment is also appropriate.

**Qualified Immunity**

Finally, Defendants argue that they are entitled to qualified immunity. As Defendants point out, "Qualified immunity shields a government official from liability when his conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Krout, 583 F.3d at 564 (8th Cir. 2009) (citing Harlow v. Fitzgerald, 457 U.S. 800, 812 (1982)). The doctrine of qualified immunity exists to "protect public officers from liability for the exercise of discretion in performing a public duty; it reflects a decision that the public is better served by public officials who will not be deterred by fear of liability from executing the office with an independent and decisive judgment." In re Scott County Master Docket, 672 F. Supp. 1152, 1172 (D. Minn. 1987) (citing Fowler v. Cross, 635 F.2d 476 (5th Cir. 1981)). "Qualified immunity may protect government officials from liability under 42 U.S.C. § 1983, but not if their conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Nelson v. Corr. Med. Servs., 583 F.3d 522, 527 (8th Cir. 2009) (citing Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quotation omitted)).

In analyzing qualified immunity claims, a court considers two questions: (1) whether the facts that a plaintiff has alleged or shown, when viewed in the light most favorable to plaintiff, support a finding that a defendant's conduct violated a constitutional right; and (2) whether that constitutional right was "clearly established" such that a reasonable official would have known that his or her actions were unlawful. Nelson, 583 F.3d at 528 (citing Pearson v. Callahan, 555 U.S. 223 (2009)).

Here, the Court finds that Plaintiff has not introduced evidence supporting any individual Defendant's violation of "clearly established statutory or constitutional rights of which a reasonable person would have known." Instead, Plaintiff has averred that he was punished because of a fighting incident wherein he was accused of kicking an officer in the head; that he has been assigned to administrative segregation and was, based on repeated conduct violations, slow to progress through the phase system; and has made cursory allegations that his administrative review opportunities have not been meaningful, and that he has been deprived access to legal materials. With the possible exception of the latter claims—which, as explained herein, are subject to summary judgment for alternate reasons—Plaintiff's claims do not rise to the level of a violation of "clearly established statutory or constitutional rights," and Plaintiff certainly has not submitted evidence that any violation of clearly established statutory or constitutional rights has occurred. Because Plaintiff has failed to offer evidence supporting such a violation, his claims are barred by qualified immunity, and summary judgment is appropriate.

Plaintiff's submitted record is void of supporting evidence beyond his own averments, and his testimony suggests only that Defendants doled out punishment in accordance with a perceived violent offense committed by Plaintiff. Plaintiff asserts that great weight should be given to the fact that he was found not guilty of assault at a criminal trial; however, the issue for this Court is whether the prison's procedures and actions constitute a violation of "clearly established statutory or constitutional rights." Because Plaintiff has failed to offer evidence supporting such a violation, his claims are barred by qualified immunity, and summary judgment is appropriate.

## **CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 67) is **GRANTED**.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

Dated this 12th day of August, 2016.